PER CURIAM.
This Court granted the petition for a writ of certiorari in this case to determine whether the Court of Civil Appeals wrongly decided a material question of first impression. That question is stated as follows in the petition:
“The issue is whether the [Court of Civil Appeals] erred in holding that relief was not available under Rule 60(b)(6)[, Ala. R.Civ.P.,] where the intentional omissions, deceptions and active misrepresentations of Oden’s former attorney led directly to the dismissal of his action and prevented him from taking curative measures to protect his interests. Stated another way, the issue is whether or not *1021 gross neglect and misconduct by one’s attorney leading to the dismissal of a meritorious action is sufficient to justify relief under Rule 60(b)(6) because such misconduct does not fall within the parameters of Rule 60(b)(1), which provides relief for ‘mistake, inadvertence, surprise or excusable neglect.’ ”
Rule 60(b), Ala.R.Civ.P., provides, in part, as follows:
“On motion and on such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four months after the judgment, order, or proceeding was entered or taken.... This rule does not limit the power of a court to entertain an independent action within a reasonable time and not to exceed three years after the entry of the judgment ... to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.”
In Ex parte Oden, 495 So.2d 664 (Ala.1986), this Court held that Dr. Oden did not lose his tenure as a teacher when he became supervisor of transportation for the Morgan County Board of Education, but that he held continuing service status as a “supervisor,” pursuant to Ala.Code 1975, § 16-24-2(b). After this Court issued its opinion, the Morgan County Board of Education (“the Board”) re-employed Dr. Oden as supervisor of transportation, but refused to give him back pay for the period during which his employment had been terminated.
Dr. Oden then filed an action against the Board for back pay and other relief. On September 19, 1988, Dr. Oden filed a motion for summary judgment, supported by his affidavit. On October 4,1988, the court entered an order stating that Dr. Oden’s motion for summary judgment was “deferred for compliance with Rule 8, Local Court Rules.” On October 6, 1988, the Board filed its own motion for summary judgment or for partial summary judgment. The court entered the following order on November 1, 1988:
Defendant, Morgan County Board of Education, moved for summary judgment, or in the alternative, for partial summary judgment, under Rule 56, ARCP, on October 6,1988, and submitted proposed findings of undisputed fact and conclusions of law, together with eviden-tiary sources demonstrating the same. Service was had October 6, 1988.
“Pursuant to Rule 8 of the Temporary Rules of Local Civil Procedure, any party opposing the motion should, within 14 days following service upon him of the matters required of the movant, file material demonstrating the existence of a genuine issue necessary to be tried.
“No statement of genuine issue or other opposition has been filed. The plaintiff has defaulted.
“Therefore, an interlocutory judgment for the defendant, Morgan County Board of Education, is entered. This interlocutory judgment will become final within 30 days of this entry, unless plaintiff can show excusable neglect (or similar justification) plus evidence of a genuine issue.”
Dr. Oden’s attorney received notice of this order, but apparently did not inform Dr. Oden. He sent a letter to the trial court stating that he had not received a copy of the Board’s motion for summary judgment and asking the trial court to set aside its November 1 order on that basis. On January 3, 1989, the court entered an order denying Dr. Oden’s motion for summary judgment. The court also entered an order granting the Board’s motion for summary judgment. That order bears on its face the date December 2, 1988, but is marked by the circuit clerk as filed on March 31, 1989. The case action summary sheet recites that a final judgment was entered on March 31, 1989.
On April 16, 1990, Dr. Oden filed a motion for relief from judgment pursuant to Rule 60(b)(6), Ala.R.Civ.P. He attached the *1022 following affidavit in support of that motion:
“Personally appeared before me, the undersigned authority in and for said State and County, ROLLAND ODEN, who, upon being duly sworn did depose and say as follows:
“1. My name is Rolland Oden. I am the plaintiff in the above-referenced civil action and I give this affidavit in support of my Rule 60(b)(6) motion for relief from the final judgment entered herein on March 31, 1989.
“2. I was not informed by my then attorney-of-record, ... or by anyone else, that there had been an adverse ruling in my civil action against the Morgan County Board of Education until November 14, 1989. On November 13, 1989, I spoke with a member of the Morgan County Board of Education who informed me that he understood that my time was expiring or had already expired in the lawsuit. On that date, I called my attorney-of-record and he informed me that he would check into the situation. On November 14, 1989, my attorney-of-record stated to me that there had been an adverse ruling approximately two months earlier but that he had not been notified. He stated that he had called the School Board attorney, Robert Harris, and that Mr. Harris had informed him that he had received the ruling a couple of months earlier and had assumed that my former attorney had been notified. My former attorney informed me that he would write the trial judge a letter to straighten the matter out. From his statements and reassurances to me, I assumed that it would not be difficult to have the matter brought back up and placed again on the trial docket.
“I spoke again with my attorney-of-record on November 20,1989, asking him to forward me a copy of his letter to the Judge. He promised that he would put it in the mail but never did. On November 27, 1989, I spoke with my attorney-of-record again and again requested a copy of his letter to the Judge. He stated that he had received no reply from the Court and then informed me that he was leaving the employment of AEA [Alabama Education Association]. My attorney-of-reeord then told me that he was gathering all the documents in my case together and that he wanted to take my case with him into private practice. I made several unsuccessful attempts in December of 1989 to contact my attorney-of-record prior to his scheduled departure in mid-December. Finally, I requested that AEA appoint me another attorney and not allow my attorney-of-record to carry my case with him into private practice.
“3. It was not until January 12, 1990, during my first meeting with my new attorney, W. Clint Brown, Jr., that I became aware of Circuit Judge R.L. Hund-ley’s rulings of October 4, 1988; October 31, 1988; and December 2, 1988 (entered March 31, 1989).
“4. I was aware that my attorney-of-record had filed on my behalf a motion for summary judgment on September 19, 1988. I became aware of this either at the time of filing or shortly thereafter. I inquired weekly of my attorney-of-record in October of 1988 as to whether or not Judge Hundley had ruled on or set a court date for hearing the motion. My attorney-of-record reported ‘no’ to all inquiries. During the first week of November, 1988, my attorney-of-record informed me that we had a court date set for November 16, 1988. On November 14, 1988, my attorney-of-record called me to report that his aunt had died and that he had to be a pallbearer on the scheduled court date of November 16. He stated that he had spoken with Robert Harris, the School Board’s attorney, about a one- or two-day delay. My attorney-of-record stated that he would be able to come either Thursday or Friday and asked me to keep my calendar clear for those days. He stated that the School Board attorney said there would be no problem with arranging the delay. Mr. Harris was to make the appropriate arrangements with the trial court and informed my attorney-of-record of the new hearing date.
*1023 “5. On November 17, 1988, I called my attorney-of-record and asked if he had received any word. He replied that he had not and stated that the case might be put on the next non-jury docket. I called my attorney-of-record again during the first week in December of 1988 for a progress report. He reported that there had been no action. I .resumed regular weekly calls in January of 1989. My attorney-of-record continually assured me that he had heard nothing from the Court other than the Judge’s secretary had told him that the case was on the Judge’s desk and that usually meant that he was preparing to put it on a docket.
“6. In April of 1989, my attorney-of-record informed me that Judge Hundley had directed the parties to file new briefs on the case. On May 19, 1989, after many requests from me, my attorney-of-record finally sent me copies of the School Board’s response to my motion for summary judgment and its motion for summary judgment and supporting documents. My attorney-of-record told me that this paperwork had been filed by the School Board in May of 1989 in response to his new brief which he had filed in April of 1989. I have now compared this paperwork with the actual filings and now know that the documents sent me in May of 1989 were copies of the documents filed by the School Board’s attorney in September of 1988 in opposition to my motion for summary judgment and in support of their own motion. On the copies my attorney-of-record sent to me, the certificate of service was deleted.
“7. From May, 1989, through the first week of November, 1989, I continued to call my attorney-of-record on a weekly or bi-weekly basis as to the status of my case. He continually told me that he was waiting for the Morgan County court system to set a date for hearing on the pending motions. He complained to me about how messed up the court system was in Morgan County and told me his strategy was to combine my case with one out of Mobile County and appeal them both directly to the Supreme Court. Before he could do that, however, he informed me that one of the cases would have to receive a ruling.
“8. Consequently, as a result of the above, I was totally and completely misled by my attorney-of-record into believing that my civil action was still pending against the Morgan County Board of Education. As a result, I was foreclosed from any opportunity to request the court to set aside its default judgment or to take an appeal therefrom.
“The above and foregoing is true and correct to the best of my personal knowledge.
“/s/Rolland Oden, Affiant”
In denying the motion, the court relied principally on Jenkins v. American Cast Iron Pipe Co., 454 So.2d 969 (Ala.1984). The court then stated the following:
“It appears to the Court that plaintiff’s only remedy (assuming the truth of his allegations) would, under our old common law practice, be an equitable action commonly called ‘a bill in the nature of a bill of review.’ Under present practice, bills in the nature of a bill of review are abolished. A substitute remedy, designated ‘an independent action,’ is prescribed in ARCP 60(b). The elements of reasoning seem to be quite similar to those relating to the writ of error coram nobis, which was also abolished, leaving 60(b)(6) as its substitute as well.
[[Image here]]
“The Court offers no opinion as to whether or not this independent action could be filed along with a malpractice claim against the attorney in question.”
At least to some extent, the assertion that a question of first impression is presented here is contradicted by the holding in Jenkins v. American Cast Iron Pipe Co., supra. Jenkins brought an action against American Cast Iron Pipe Company (“ACIPCO”) alleging defamation. This Court set forth the history and resolution of that action as follows:
“On February 9, 1982, ACIPCO filed and served on Jenkins’s attorney notice that it would take Jenkins’s deposition at *1024 ACIPCO’s attorney’s office on March 5, 1982. Jenkins and his attorney failed to appear for the deposition. On March 11, ACIPCO’s attorney sent a letter to Jenkins’s attorney to ‘confirm our telephone conversation that I will take the plaintiff’s deposition in the above-styled action on March 26, 1982 at 9:00 a.m. in our offices.’ Jenkins again failed to attend, though it appears that he was at his attorney’s office waiting to go to the deposition when ACIPCO's attorney telephoned Jenkins’s attorney’s office.
“ACIPCO filed a motion for sanctions on the following Monday, March 29, requesting the court to dismiss the action, or in the alternative, to require Jenkins to pay ACIPCO’s attorney’s fees incurred in connection with the depositions. The motion was set for hearing on April 14, 1982, and a copy of it was served on Jenkins’s attorney. Neither Jenkins nor his attorney attended the hearing on April 14, and the court dismissed the action on that date.
“On August 10, 1982, Jenkins, through a different attorney, filed a Rule 60(b) motion to set aside the judgment of dismissal. The motion averred that Jenkins’s previous attorney had advised him that the deposition had been continued, and that, although Jenkins had stayed in touch with his attorney, he had not been informed of the dismissal, only learning of it approximately thirty days before filing the Rule 60(b) motion.
[[Image here]]
“The trial court’s order in this case is supported not only by Jenkins’s failure to appear at the depositions or the hearing on the motion for sanctions, but also by the long delay in filing the motion for relief from judgment. Jenkins argues that he received no notice of the hearing, but the motion for sanctions, which included notice of the April 14 hearing, was served on Jenkins's attorney, as required under Rule 5(b), A.R.Civ.P. The failure of Jenkins to more actively prosecute his action precludes us from finding the existence of ‘extreme hardship or injustice’ which would require a reversal of the trial court.
“Jenkins further claims that his delay in filing the 60(b) motion was due to the fact that his attorney did not inform him of the dismissal. This cannot serve as a ground for a 60(b)(6) motion, however, because the ‘[ojmissions and commissions of an attorney are to be regarded as the act of the client whom he represents.’ ... Moreover, ‘[a] party remains under a duty to take legal steps to protect his own interest.’ ”
454 So.2d at 970-71 (citations omitted).
In this case, the Court of Civil Appeals relied on Cassioppi v. Damico, 536 So.2d 938 (Ala.1988), and Hill v. Townsend, 491 So.2d 237 (Ala.1986), to hold that relief is not available to Dr. Oden under Rule 60(b)(6) because it could have been available, if timely requested, under Rule 60(b)(1). That court continued:
“Furthermore, even if Rule 60(b)(1) were not applicable, we note that Oden’s claim that the delay in filing the Rule 60(b) motion was due to the fact that the attorney did not inform him of the dismissal of an action cannot serve as a ground for his 60(b)(6) motion, because actions or the lack of action of an attorney are regarded as the acts of the client. Jenkins_ Oden was under a duty to take legal steps to protect his own interest. Id. Although Oden claims that he called his former attorney weekly, apparently for almost a year, to inquire about the status of the case Oden was under a duty to inquire further as to the status of his case. Id.”
617 So.2d 1017, 1019 (Ala.Civ.App.1991).
Dr. Oden takes issue with these holdings, and seeks to distinguish Jenkins, on the following grounds:
“In so holding, the lower appellate court failed to address the serious, underlying issue presented by Oden’s appeal. Dr. Oden’s petition does not present a situation where an attorney merely failed to advise a client of notice received, nor does it involve a situation where the attorney was not aware of the entry of a judgment, situations clearly provided for under Rule 60(b)(1). Nor does this case involve an attorney simply *1025 failing to inform a client of the dismissal of an action. In those situations, the general rule that the actions or omissions of an attorney are to be regarded as the acts of the client is justifiably applicable. See: Jenkins....
“On the contrary, Dr. Oden’s petition presents the question whether an attorney’s intentional and active misrepresentations and misconduct leading directly to the dismissal of a client’s meritorious claim and preventing the client from taking curative measures to cure default ... constitute ‘any other reason justifying relief from the operation of the judgment.’ ... [T]he facts and circumstances set forth by Dr. Oden clearly speak of a type of intentional misconduct and gross negligence not anticipated by Rule 60(b)(1).”
In addition to Jenkins, the parties cite several other cases pertinent to the issue. In Lee v. Tolleson, 502 So.2d 354 (Ala.1987), Lee’s trial counsel failed to respond to a summary judgment motion and failed to appear at a hearing on the motion. The trial court entered a summary judgment for Tolleson. Lee’s counsel filed a Rule 59(e) motion to alter, amend, or vacate the judgment, but the attorney again failed to support that motion with any evidence contradicting Tolleson’s evidence in support of the summary judgment, and he failed to appear at a hearing on the Rule 59(e) motion. The court overruled the Rule 59(e) motion. Lee, through other counsel, later filed a Rule 60(b)(6) motion, but the trial court denied relief. This Court affirmed, stating:
“Relief may be granted where there exist extraordinary circumstances, as where ‘the personal problems or psychological disorders of an attorney cause him to neglect a case to the extent that a default or summary judgment is entered against the unsuspecting client.’ Sanford v. Arjay Oil Co., 686 P.2d 566, 571 (Wyo.1984). See L.P. Steuart, Inc. v. Matthews, 329 F.2d 234 (D.C.Cir.1964), cert. denied, 379 U.S. 824, 85 S.Ct. 50,13 L.Ed.2d 35 (1964); United States v. Cirami, 563 F.2d 26 (2d Cir.1977). In order to justify relief because of extraordinary circumstances, however, it is not enough to point at the mere fact that one’s attorney was absent from a scheduled hearing. Nothing in such a claim indicates that the attorney’s failure to appear ‘ “was other than deliberate or the product of neglect,” ’ United States v. Cirami, 563 F.2d at 34 (quoting Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)); or ‘the result of his having taken on too may cases to give proper attention [to the one at hand],’ id. (citing Schwarz v. United States, 384 F.2d 833, 836 (2d Cir.1967); Cline v. Hoogland, 518 F.2d 776, 778 (8th Cir.1975)). Reasons accounting for the attorney’s absence must also be set forth, and they must show a set of extraordinary circumstances. See Sanford v. Arjay Oil. Co., 686 P.2d 566 (Wyo.1984) (personal problems or psychological disorders of attorney held extraordinary circumstances); United States v. Cirami, 563 F.2d 26 (2d Cir.1977) (attorney’s ‘constructive disappearance’ due to mental illness held extraordinary circumstances); Vindigni v. Meyer, 441 F.2d 376 (2d Cir.1971) (‘the unusual fact of the complete disappearance of plaintiff’s attorney’ held extraordinary circumstances).
“Appellant sets forth no reason explaining the attorney’s absence. We find nothing to justify the relief appellant seeks. See United States v. Cirami, 535 F.2d 736 (2d Cir.1976). Given the lack of evidence supporting the plaintiffs’ motion, we find that the trial court did not abuse its discretion in overruling that motion.”
502 So.2d at 356-57. As can be seen by comparing this quotation with that above from Jenkins, this Court left more room for the exercise of discretion in granting Rule 60(b)(6) relief in Lee than in Jenkins. Even so, the Court tightly constrained the circumstances in which relief can be granted. The circumstances in Dr. Oden’s affidavit do not, so far as they go, exactly fit the examples cited in Lee, but Dr. Oden’s diligent efforts in the face of the alleged persistent manipulation, inaction, and de *1026 ception by his attorney at least arguably present the sort of extraordinary circumstances contemplated by Rule 60(b)(6) and discussed in Lee.
In Cassioppi v. Damico, 536 So.2d 938 (Ala.1988), and Hill v. Townsend, 491 So.2d 237 (Ala.1986), the Court affirmed the denial of relief under Rule 60(b)(6) where the actions had been dismissed for failure of the plaintiffs attorney to appear or to prosecute the action. The Court said in both cases that relief might have been available under Rule 60(b)(1) if the motion had been made within four months. Cf. Coretti v. Pete Wilson Roofing Co., 507 So.2d 408 (Ala.1986), in which the Court said that lack of notice from the circuit clerk of the entry of a judgment is not available as a ground for relief under Rule 60(b) because a limited form of relief is available under Rule 77(d) on that ground.
This Court has held that the grant or denial of relief under Rule 60(b)(1) or (6) is within the sound discretion of the court and will not be reversed absent an abuse of that discretion. Baker v. Ball, 473 So.2d 1031 (Ala.1985); Smith v. Clark, 468 So.2d 138 (Ala.1985); Montgomery v. Burchell, 456 So.2d 60 (Ala.1984); Pierson v. Pierson, 347 So.2d 985 (Ala.1977).
However, the court indicated in this case that an independent action might be available even as it denied relief under Rule 60(b)(6). The committee comments to Rule 60 indicate, however, that there is ordinarily no significant difference between the filing of a Rule 60(b) motion and the filing of an independent action:
“The normal procedure to attack a judgment under this rule will be by motion in the court which rendered the judgment. If the relief does not appear to be available under the rule, or if relief from the judgment is sought in some other court than the court which rendered the judgment, the party should bring an independent proceeding_ But an erroneous choice between these procedures is not fatal to the party attacking the judgment. There is little procedural difference between the two methods of attack, and since nomenclature is unimportant, courts have consistently treated a proceeding in form an independent action as a motion, and vice versa, where one but not the other was technically appropriate, and any procedural difference between them was immaterial in the case.”
(Citations omitted.) Thus, the trial court’s indication that relief might be available through an independent action although not through Rule 60(b)(6) is not an appropriate reading of Rule 60(b) in the absence of a particularized reason why one mode of relief should be available but not the other. Moreover, the court’s reservation of opinion on the availability of relief through an independent action is at least some indication that the court denied relief under Rule 60(b)(6) only because of the apparent binding effect of Jenkins and even though the court may have, in the unfettered exercise of discretion, granted Dr. Oden relief on the merits of his Rule 60(b)(6) motion.
A similar situation was presented to this Court in Giles v. Giles, 404 So.2d 649 (Ala.1981). Mrs. Giles brought an action to recover land in the possession of her son J.C. Giles, Jr. After a summary judgment for Mrs. Giles and the denial of a Rule 59(e) motion filed by the son, a new attorney entered an appearance and filed a Rule 60(b)(6) motion on behalf of the son. The “sworn motion” alleged that the son had a deed to the property from his parents, but that he had not offered it in defense against his mother’s action because his original attorney and others had told him the deed was not valid because it had only one witness. This Court reversed the denial of the Rule 60(b)(6) motion because of the trial court’s erroneous conclusion regarding the applicability of relief under that Rule:
“The trial court denied the motion without a hearing. It is inferable from the language of the order denying the motion that the court reasoned that a Rule 60 motion was not available, in any event, to remedy situations like the one presented here. If that be the case, we think the court misconceived the spirit of the rule. On the record before us we cannot say that the court abused its discretion in denying the motion, but we are *1027 of the opinion that a hearing should be held to determine the circumstances which led to the failure of the deed being offered into evidence.”
404 So.2d at 651. See also Blackwell v. Adams, 467 So.2d 680 (Ala.1985), in which the trial court denied relief under Rule 60(b) because an earlier motion for new trial had been made and denied. This Court held that the trial court erred in construing the Rule 60(b) motion as an impermissible second collateral attack on the judgment.
In discussing the applicability of Rule 60(b), the Court in Giles quoted the following from Wright & Miller, Federal Practice and Procedure: Civil § 2864:
“A quite typical kind of case is that in which a party comes in more than a year [four months] after judgment to assert that he is the victim of some blunder by his counsel. Claims of this kind seem to fit readily enough within such grounds as mistake, inadvertence, and excusable neglect, all stated in clause (1), and courts frequently have so reasoned and held that clause (6) was inapplicable. But if the court is persuaded that the interests of justice so require, it is likely to find aggravating circumstances sufficient to permit it to say that the case is properly within clause (6).”
404 So.2d at 651.
-Dr. Oden and the amicus curiae have also cited cases from other jurisdictions, including the cases quoted and discussed in Lee v. Tolleson, supra. Because of the similarity of our Rule 60(b) to Rule 60(b) of the Federal Rules of Civil Procedure, the two rules “should be similarly interpreted.” Haskew v. Bradford, 370 So.2d 259, 261 (Ala.1979). See, e.g., In re Virginia Information Systems Corp., 932 F.2d 338, 342 (4th Cir.1991); Boughner v. Secretary of Health, Education & Welfare, 572 F.2d 976 (3d Cir.1978); and L.P. Steuart, Inc. v. Matthews, 329 F.2d 234 (D.C.Cir.), cert. denied, 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964).
The court in Jackson v. Washington Monthly Co., 569 F.2d 119, 122 (D.C.Cir.1977), addressed the following situation:
“From the showing now made by appellant, it appears that his lawyer might not only have been grossly rather than just mildly negligent toward his client, but that he might also have misled the client by reassuring him that the litigation was continuing smoothly when in fact it was suffering severely from lack of attention. These reassurances may even have continued long after the litigation, to the lawyer’s knowledge, had already been aborted.”
(Footnotes omitted.) This description could be applied without any change to Dr. Oden’s affidavit. The Jackson court said, “We in this circuit have held that so serious a dereliction by an attorney, when unaccompanied by a similar default by the client, may furnish a basis for relief under Rule 60(b)(6).” Id. In one of the footnotes to this sentence, the court said, “When a client does not knowingly and freely acquiesce in his attorney’s neglectful conduct, but instead is misled into believing that the attorney is industrious, dismissal is not only a harsh step but one for which the circumstances provide little support for an agency theory as a rationale.” Id., n. 18 (citations omitted).
Finally, the court in Jackson concluded:
“Dismissals for misconduct attributable to lawyers and in no wise to their clients invariably penalize the innocent and may let the guilty off scot-free. That curious treatment strikes us as both anomalous and self-defeating. When the client has not personally misbehaved and his opponent in the litigation has not been harmed, the interests of justice are better served by an exercise of discretion in favor of appropriate action against the lawyer as the medium for vindication of the judicial process and protection of the citizenry from future imposition. Public confidence in the legal system is not enhanced when one component punishes blameless litigants for the misdoings of another component of the system; to the laymen unfamiliar with the fundamentals of agency law, that can only convey the erroneous impression that lawyers pro *1028 tect other lawyers at the expense of everyone else.”
569 F.2d at 123-24.
Based on the foregoing, we hold that Jenkins should be limited to its facts and should be read as holding that those facts do not show such extraordinary circumstances or such diligence by Jenkins as to support a holding that the trial court abused its discretion in denying relief. Here, the trial court’s ambivalence over the availability of an independent action instead of Rule 60(b)(6) relief, combined with the extraordinary diligence shown by Dr. Oden in spite of his lawyer’s alleged misrepresentations, which were sufficiently plausible on their face to excuse Dr. Oden from going beyond his attorney to inquire further as to the status of his action, constitute such extraordinary circumstances as to support a reversal of the judgment for a hearing and reconsideration by the trial court.
We note that, in addition to there being appropriate grounds for relief alleged in Dr. Oden's motion and affidavit, the record could support a finding that there are unresolved issues as to the merits of Dr. Oden’s claims and the Board’s defenses. The Board’s motion was based on the statute of limitations, and there is no basis in the record for concluding that a statutory period of limitations began to run on Dr. Oden’s claim for back pay at the time he was terminated instead of at the time his reinstatement was ordered and the Board denied the request for back pay. Furthermore, his action also requested relief regarding the amount of his salary upon reinstatement, and the limitations period on this claim could not have started to run until his reinstatement.
It also appears that, in entering the summary judgment for the Board, the court may have erroneously relied on a local rule that was not properly in effect[1] and that contradicted the Alabama Rules of Civil Procedure: the trial court referred to Dr. Oden as being “in default” because of that local rule when he did not respond within 14 days to the Board’s motion for summary judgment. While the failure to appear at a summary judgment hearing might be a default, a failure to file a response to a summary judgment motion is not likely to justify the entry of a summary judgment based on a supposed default. In the latter case, the moving party can be entitled to a summary judgment only if the materials submitted in support of the motion affirmatively establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R.Civ.P. If the nonmoving party does not respond, he ordinarily takes only the risk that the motion will be granted against him on the merits, not the risk that a default will be entered against him.
Furthermore, Dr. Oden had submitted an affidavit in support of his own motion for summary judgment. Although that affidavit did not relate directly to the statute of limitations, it did respond indirectly to the Board’s motion to the extent that he showed the dates of his termination, the reversal of the judgment affirming his termination, and his reinstatement. The Board’s motion does not show on its face that the action is barred; indeed, Dr. Oden’s cause of action was at least arguably not ripe until he had been reinstated and back pay had been denied. We make no judgment on these issues, because they are not directly presented on this appeal; we recite them only to show that the Board was not clearly entitled to a judgment as a matter of law.
For the foregoing reasons, the judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
*1029 HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.

. This Court’s records indicate that, although the circuit court submitted the proposed rule for approval, there were objections registered and this Court did not approve the proposed rule. We note that the trial court referred to it as a "temporary local rule,” apparently treating it as being in effect without this Court’s approval. Under Rule 83, Ala.R.Civ.P., as it existed at the time of these events, "A local rule so proposed shall take effect only upon approval by the Supreme Court of Alabama.” Effective April 14, 1992, this Court amended Rule 83 so as to abolish all local rules. See Ala.Rptr., 592-594 So.2d XLIX.